**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**SEAN M WOODWARD,**
**CHARLES D. ALEXIS,**
**NIAMBI D. PRESSLEY,**
**JEFFREY A. McCARTER, JR. and**
**ROBENA D. CATHEY,**

                              **Plaintiffs,**

**v.**

                                                          **12-CV-0373A(Sr)**

**ENERGY CURTAILMENT SPECIALISTS, INC.**
**and**
**BIDURENERGY, INC.,**

                    **Defendants.**

---

## DECISION AND ORDER

        This case was referred to the undersigned by the Hon. Richard J. Arcara,

pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon

dispositive motions.  Dkt. #9.


        Plaintiffs, represented by attorney Prathima Reddy, commenced this

action alleging discrimination on the basis of race in violation of Title VII of the Civil

Rights Act  of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the New York State

Human Rights Law, N.Y. Exec. Law § 296 ("NYSHRL").  Dkt. #1.  Mr. Alexis, Mr.

McCarter and Mr. Cathey also alleged claims of hostile work environment and

retaliation in violation of Title VII and the NYSHRL.  Dkt. #1.

Ms. Reddy's retainer agreement provided that plaintiffs would pay one-third of the net recovery to counsel. Dkt. #47-2; Dkt. #47-3 & Dkt. #47-4. The retainer agreement provides Ms. Reddy with a lien for her fee on any sum recovered by way of settlement "even though client may discharge attorney and obtain another attorney before settlement is received."  Dkt. #47-2; Dkt. #47-3 & Dkt. #47-4.  The retainer agreement also provides that Ms. Reddy may withdraw from the action at any time, on reasonable notice to plaintiffs.  Dkt. #47-2; Dkt. #47-3 & Dkt. #47-4.

Ms. Reddy moved to withdraw as counsel for plaintiffs Charles D. Alexis and Robena D. Cathey on December 20, 2012.  Dkt. #15.  In support of her motion, Ms. Reddy affirmed that fundamental differences of opinion concerning the best approach to the litigation of the case and a breakdown in communication made it impossible for her to continue as counsel.  Dkt. #15-1.  Ms. Reddy further affirmed that

> the positions that Ms. [sic] Alexis and Mr. Cathey continue to advocate, if acted upon, would not be in the best interest of co-plaintiffs, Mr. Woodward, Ms. Pressley and Mr. McCarter. It would be unethical for me to continue representing Mr. Alexis and Mr. Cathey.

Dkt. #15-1, ¶ 11.  By text order entered January 22, 2013, Ms. Reddy was granted permission to withdraw as counsel for plaintiffs Charles D. Alexis and Robena D. Cathey.  Dkt. #20.

On January 28, 2013, attorney Kevin P. Wicka filed a notice of appearance for plaintiffs Charles D. Alexis, Robena D. Cathey and Jeffrey A. McCarter. Dkt. #21.

Charles D. Alexis, Robena D. Cathey and Charles McCarter filed stipulations of dismissals on September 12, 2013.  Dkt. ##39-41.  Stipulations of dismissal were filed on October 30, 2013 with respect to the remaining plaintiffs, Sean Woodward and Niambi D. Pressley, who continued to be represented by Ms. Reddy.  Dkt. ##44-45.

Currently before the Court is Ms. Reddy's motion for attorney's fees.  Dkt. #47.  In support of her motion, Ms. Reddy declares that she filed and oversaw administrative charges with the U.S. Equal Employment Opportunity Commission ("EEOC"), commenced this action, represented plaintiffs during an initial mediation session and subsequent settlement negotiations and collected and reviewed discovery documents in preparation for litigation of plaintiffs' claims.  Dkt. #47-1, ¶¶ 13 & 25.  Ms. Reddy submits documentation of the time spent working on plaintiffs' claims and seeks $3,330.00 from the settlement proceeds paid to Charles D. Alexis; $2,830.00 from the settlement proceeds paid to Robena D. Cathey; and $4,230.00 from the settlement proceeds paid to Jeffrey McCarter.  Dkt. #47-1, ¶ 15.

Mr. Wicka argues that Ms. Reddy is not entitled to a charging lien as set forth in New York Judiciary Law § 475 because her withdrawal from representation of Charles D. Alexis and Robena D. Cathey was without good cause and her discharge by Mr. McCarter was for cause.  Dkt. #54, pp.2 & 7.  In fact, Mr. Wicka argues that Ms. Reddy's failure to inform Mr. Alexis, Mr. Cathey and Mr. McCarter of defendant's

settlement offer[1] constitutes misconduct sufficient to forfeit her charging lien.  Dkt. #54,

pp.6 & 7-8.  In addition, Mr. Wicka argues that Ms. Reddy forfeited her charging lien

because plaintiffs' interests in pursuing the litigation diverged over the potential use of

an audio recording obtained by Mr. Alexis.  Dkt. #54, pp.5-6. Even if Ms. Reddy is

entitled to attorney's fees, Mr. Wicka argues that such fees should be calculated from

the commencement of the federal court action on April 27, 2012 rather than the

commencement of Ms. Reddy's representation of plaintiffs before the EEOC.  Dkt. #54,

pp.8-9.  Mr. Wicka also challenges Ms. Reddy's hourly rate of $250 for Mr. Alexis and

Mr. Cathey and $270 for Mr. McCarter, given that he charges an hourly rate of $225

even though he has more experience and peer recognition than Ms. Reddy.  Dkt. #54,

p.11.  Finally, Mr. Wicka challenges the value of Ms. Reddy's services to plaintiffs given

her lack of success in mediation and failure to demand discovery or respond to

defendants' discovery demands.  Dkt. #50, ¶¶ 16 & 21 & Dkt. #54, pp.12-13.

Ms. Reddy replies that her representation of plaintiffs conformed with

professional and ethical standards and specifically declares that she "never failed to

present any settlement offers to any plaintiff in this case" and, although acknowledging

concern over Mr. Alexis' intent to release an audiotape of a conversation between him

and his supervisor to the media, denies that she would not have disclosed the

audiotape at the appropriate time.  Dkt. #55, ¶¶ 3, 5 & 16.  Ms. Reddy declares that the

plaintiffs' interests in this matter are not divergent, but that the communications

---

[1] Mr. Alexis, Mr. Cathey and Mr. McCarter each declare that they "later learned that Defendants' offered a lower settlement amount, but this information was never conveyed to me by Ms. Reddy."  Dkt. #51, ¶ 12; Dkt. #52, ¶  11 & Dkt. #53, ¶ 12.

between her and Mr. Alexis and Mr. Cathey had deteriorated to the point where they were impacting Ms. Reddy's relationship with the other plaintiffs.  Dkt. #55, ¶ 6.  Ms. Reddy declares that she charges a standard fee of $250 per hour and argues that this is a reasonable hourly rate given her experience and qualifications.  Dkt. #55, p.10.  Ms. Reddy earned a BA in Economics from the University of California, Berkeley and a J.D. from Case Western Reserve School of Law and previously worked for the District of Columbia Office of Human Rights.  Dkt. #55-2.  She was admitted to practice in 2006.

During the time period during which Ms. Reddy represented plaintiffs, New York Judiciary Law § 475 provided:

> From the commencement of an action, special or other proceeding in any  court or before any state, municipal or federal department, except a department of labor, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination.  The court upon the petition of the client or attorney may determine and enforce the lien.

The Court of Appeals for the Second Circuit has "long recognized that the lien created by § 475 is enforceable in federal courts in accordance with its interpretation by New York courts."  *Chesley v. Union Carbide Corp.*, 927 F.2d 60, 67 (2d Cir. 1991); *See Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998) (New York Judiciary Law § 475 governs attorneys' charging liens in federal courts sitting in New York).  Thus, "an attorney who is discharged is statutorily entitled to a charging lien on any monetary recoveries obtained by the former client in the proceedings in

which the attorney has rendered legal services."  *Stair v. Calhoun*, 722 F. Supp.2d 258, 267 (E.D.N.Y. 2010).

"The right to assert a charging lien under section 475 is relinquished only when the attorney is terminated by the client for cause or withdraws without proper justification."  *Varga v. Rent-A-Center East, Inc*., No. 10-CV-559, 2012 WL 6626284, at *3 (N.D.N.Y. Dec. 19, 2012)*; See Petition of Harley & Browne*, 957 F. Supp. 44, 48 (S.D.N.Y. 1997) ("It is well-settled that an attorney loses his right to enforce a charging lien if the attorney withdraws or is discharged for cause."). "Courts typically find a discharge 'for cause' where there has been a significant breach of legal duty." *Antonmarchi v. Consolidated Edison Co.*, 678 F. Supp.2d 235, 241 (S.D.N.Y. 2010). "Evidence of a general dissatisfaction with an attorney's performance or a difference of opinion between attorney and client does not establish that the attorney was discharged for cause absent some evidence that the attorney failed to properly represent the client's interest."  *Greenberg v. Cross Island Indus., Inc*., 522 F. Supp.2d 463, 467 (E.D.N.Y. 2007); *See Allstate Ins. Co. v. Nandi,* 285 F. Supp.2d 309, 312 (S.D.N.Y. 2003) ("Where an attorney is discharged not because he or she neglected to properly represent the client but because of personality conflicts, misunderstandings or differences of opinion having nothing to do with any impropriety by the lawyer, the discharge is not 'for cause' and the attorney does not forfeit his or her fee."); *Doviak v. Finkelstein & Partners, LLP*, 90 A.D.3d 696 (2nd Dep't 2011) (client's dissatisfaction with reasonable strategic choices regarding litigation does not constitute cause for the discharge of an attorney).

In the instant case, Ms. Reddy's motion to withdraw was granted by the Court due to her uncontradicted declarations of fundamental differences of opinion concerning the best approach to the litigation of the case and a breakdown in communication between her and Mr. Alexis and Mr. Cathey.  Neither the allegations in her motion to withdraw nor the declarations submitted by plaintiffs in response to this motion for attorney's fees suggest that plaintiffs' interests in this discrimination lawsuit were adverse to each other, but merely suggest differing opinions in litigation strategy justifying counsel's motion to withdraw.  *See  S.A. v. S.K.*, 40 Misc.3d 1241 (Sup. Ct. Bronx Cty 2013) ("there must a showing that the attorney's representation of a client is materially adverse to that of another client to warrant a non-discretionary disqualification pursuant to the ethical rules"); *Cf. Quinn v. Walsh*, 18 A.D.3d 638, 648 (2nd Dep't 2005) (representation of both the driver of an automobile involved in a collision and a passenger in that automobile was a conflict of interest disqualifying counsel from payment of legal fees for services rendered); *Pessoni v. Rabkin*, 220 A.D.2d 732 (2nd Dep't 1995) (multiple representation of driver of automobile involved in collision and passengers in that automobile created a conflict of interest disqualifying counsel from payment of legal fees for services rendered).  Similarly, Mr. McCarter's declaration does not demonstrate, at the time of his discharge of Ms. Reddy, any basis for terminating her services beyond a general dissatisfaction with her strategy for mediation and commitment to plaintiff's case, which is insufficient to establish termination for cause.

However, plaintiffs' allegations of subsequently learning of counsel's failure to communicate a settlement offer, if proven, would establish a violation of New

York's Rules of Professional Conduct, thereby barring Ms. Reddy's claim to fees subsequent to the ethical violation. *See Zito v. Harding,* 110 A.D.3d 628, 629 (1st Dep't 2013) ("If proven, the failure to communicate a settlement offer would constitute a violation of Rules of Professional Conduct . . . and could bar [counsel's] claim to fees, at least from [the date the offer was conveyed to counsel] onward."); *Margrabe v. Rusciano,* 55 A.D.3d 689, 691 (2nd Dep't 2008) (awarding fees from commencement of representation until attorney engaged in misconduct by advancing loan to client), *lv. denied*, 11 N.Y.3d 715 (2009). "Where there are conflicting claims as to whether an outgoing attorney was discharged with or without cause, a hearing is necessary to resolve such a dispute." *Schultz v. Hughes*, 109 A.D.3d 895, 897 (2nd Dep't 2013). Thus, absent a request from Ms. Reddy for a hearing to resolve the contradiction between plaintiffs' declarations and Ms. Reddy's declaration as to whether plaintiffs were informed of a settlement offer, the Court will determine Ms. Reddy's fee without consideration of the 2.6 hours billed to the three plaintiffs for mediation and subsequent settlement discussions.

Moreover, Mr. Wicka is correct that, by its terms, Judiciary Law § 475 does not permit a lien for services rendered prior to the commencement of the action. *Stair*, 722 F. Supp.2d at 270; *See Winkfield v. Kirschenbaum & Philips, P.C.*, No. 12 Civ. 7424, 2013 WL 371673, at * (S.D.N.Y. Jan. 29, 2013) (charging lien should be fixed to account for services rendered beginning at the time of the action's commencement and not at the time that the firm was retained); *Melnick v. Press*, No. 06-CV-6686, 2009 WL 2824586, at *6 (E.D.N.Y. Aug. 28, 2009) (same).  Accordingly,

the Court will disregard billing entries on or before April 27, 2012, the date of filing of the Summons and Complain in this action.

"The amount of a charging lien granted under § 475 is to be determined by the reasonable value of the services provided."  *Skylon Corp. v. Greenberg*, 164 F.3d 619 (2d Cir. 1998) (internal quotation omitted); *See Stair*, 722 F. Supp.2d at 268 (Absent an express agreement between the attorney and client to the contrary, it is well settled in New York that a discharged attorney may recover the fair and reasonable value of the services rendered computed on the basis of *quantum meruit.)*. "Among the factors a court must consider in assessing the amount of a charging lien on a *quantum meruit* basis are: (1) the difficulty of the matter; (2) the nature and extent of the services rendered; (3) the time reasonably expended on those services; (4) the quality of performance by counsel; (5) the qualifications of counsel; (6) the amount at issue; and (7) the result obtained (to the extent known)." *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 148 (2d Cir. 1998).  The "overriding criterion for determining the amount of a charging lien is that it be 'fair.'"  *Sutton v. New York City Transit Auth.*, 462 F.3d 157, 161 (2d Cir. 2006).  "Moreover, the determination of the reasonable value of the attorney's services 'is a matter within the sound discretion of the trial court.'"  *Sequa,* 156 F.3d at 149, *quoting Chernofsky & DeNoyelles v. Waldman*, 212 A.D.2d 566 (2d Dep't 1995).

Upon consideration of these factors and review of Ms. Reddy's billing entries, the Court finds it appropriate to compensate counsel for 10.2 hours expended on behalf of Mr. McCarter; 5.8 hours expended on behalf of Mr. Cathey; and 5.1 hours spent on behalf of Mr. Alexis at an hourly rate of $200.  *See Tyo v. Lakeshore Hockey*

*Arena, Inc.,* No. 11-CV-6239, 2014 WL 2532447, at *3 (W.D.N.Y. June 5, 2014) ($250 hourly rate reasonable for attorney practicing employment law for 25 years); *Ghadersohi v. Health Research, Inc.*, No. 08-CV-355, 2011 WL 5040668, at *6 (W.D.N.Y. Oct. 21, 2011) ($250 hourly rate reasonable for firm partner with twenty years legal experience); *Grievson v. Rochester Psychiatric Center*, 746 F. Supp.2d 454, 463 (W.D.N.Y. 2010) ($250 hourly rate reasonable for skilled litigator with nearly 30 years of experience in employment cases)*; Williams v. Beemiller, Inc.*, 2010 WL 891001 (W.D.N.Y. Mar. 10, 2010) ($250 hourly rate reasonable for named partner with over 30 years of federal litigation experience; $200 hourly rate reasonable for partner with 10 years litigation experience), *rev'd on other grounds,* 416 Fed. Appx. 97 (2011).

Therefore, it is hereby ordered that Mr. Wicka forward attorneys fees to Ms. Reddy as follows: $2,040 for her representation of Mr. McCarter; $1,160 for her representation of Mr. Cathey; and $1,020 for her representation of Mr. Alexis.

**SO ORDERED.**

DATED:     Buffalo, New York
           January 27, 2015

                   *s/ H. Kenneth Schroeder, Jr.*
                   **H. KENNETH SCHROEDER, JR.**
                   **United States Magistrate Judge**